IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN THE MATTER OF THE TAX LIABILITIES OF: JOHN DOES, United States taxpayers who, at any time during the years ended December 31, 2006, through December 31, 2014, directly or indirectly had interests in or signature or other authority (including authority to withdraw funds, trade or give instructions or receive account statements, confirmations or other information, advice or solicitations) with respect to any financial accounts maintained at, monitored by, or managed through Belize Bank International Limited ("BBIL") or Belize Bank Limited ("BBL"), or Belize Corporate Services Limited ("Belize Corporate Services"), their predecessors, subsidiaries, and affiliates, and financial accounts maintained at, monitored by, or managed through other financial institutions that BBIL, BBL, or Belize Corporate Services permitted to transact client business through their United States correspondent accounts at Bank of America, National Association or Citibank, National Association | Case No. |

**UNITED STATES' MEMORDANDUM IN SUPPORT OF ITS *EX PARTE* PETITION FOR LEAVE TO SERVE "JOHN DOE" SUMMONSES**

The United States of America submits this memorandum in support of its petition for an order approving the issuance of two Internal Revenue Service "John Doe" summonses to Citibank, N.A., and Bank of America, N.A., for correspondent account information related to Belize Bank International Limited (BBIL), Belize Bank Limited (BBL), or Belize Corporate Services, collectively the Belize entities. Pursuant to 26 U.S.C. § 7609(h), the Court's determination to approve issuance of John Doe summonses "shall be made *ex parte* and shall be

1

made solely on the petition and supporting affidavits." Thus, the pleadings filed in this proceeding will not be served upon any person or entity and no other filings are permitted from other persons or entities. Accordingly, this matter is ripe for the Court's consideration. The United States requests that the Court review the petition and supporting documents and enter the proposed order at the Court's earliest opportunity.

## INTRODUCTION

In an effort to evade their federal tax obligations, U.S. taxpayers often place assets and income in undisclosed foreign bank accounts in countries known for their financial secrecy. In some cases, taxpayers use shell entities to serve as the nominal owners of these accounts with the hope of further obscuring their interests. Taxpayers who fail to report foreign accounts or the income placed in such accounts are nevertheless liable for federal income taxes. In addition, using these practices to evade one's reporting and tax obligations is illegal, and taxpayers who do so face the prospect of substantial penalties and criminal prosecution. While the taxpayers employing such tactics are notoriously — and intentionally — difficult to track, they cannot hide their activity completely. Critically, their activities are often reflected in the records of the foreign banks' correspondent bank account. Foreign banks maintain so-called correspondent accounts at U.S. banks to conduct transactions involving U.S. currency. The United States now seeks this Court's permission to issue two John Doe summonses to obtain records related to such correspondent accounts from U.S. banks and use these records to identify delinquent U.S. taxpayers.

BBIL and BBL are related banks based in Belize that market their ability to provide secret banking services to foreign residents. Belize Corporate Services is a related corporate service provider that has marketed its ability to set up Belize corporate entities, used to hide the

identity of account owners.  As detailed below, the IRS knows — from interviews, voluntary disclosures, and records of criminal prosecutions — that U.S. taxpayers have used the Belize entities to set up and maintain undisclosed accounts to evade their U.S. tax obligations. Additionally, the IRS is aware that BBIL and BBL maintained correspondent bank accounts at Citibank and Bank of America to conduct transactions involving U.S. currency.  Belize Corporate Services used BBIL and BBL's correspondent account at Bank of America to accept payment from clients.  The IRS has strong reason to believe that records of these correspondent accounts will reveal the identities of unknown delinquent taxpayers.

The United States brings this *ex parte* proceeding under § 7609(f) and (h) of the Internal Revenue Code (26 U.S.C.) for leave to serve John Doe summonses on Citibank and Bank of America.  The John Doe summonses seeks records of the Belize entities' United States correspondent accounts.  The "John Does" whose identities are sought by these summonses are taxpayers who used the Belize entities to conceal their income and assets in foreign accounts from the U.S. government.  The issuance of the summonses is warranted here because (i) the summonses relate to an ascertainable group or class of persons comprised of U.S taxpayer-clients of the Belize entities; (ii) there is a reasonable basis for believing these U.S. taxpayers failed to comply with internal revenue laws; and (iii) information sufficient to establish these U.S. taxpayers' identities is not readily available to the IRS from other sources.  In support of this petition, the United States submits this memorandum, the declaration of IRS Revenue Agent Michael Frazier ("Frazier Decl."), and the attached exhibits.

**BACKGROUND**

I.     **U.S. Tax Laws Require Disclosing Foreign Financial Accounts and Paying Applicable U.S. Taxes**

United States taxpayers with gross income in excess of a minimum threshold amount in any one calendar year are required to file a U.S. Individual Income Tax Return, IRS Form 1040, with the IRS that reports the taxpayer's income from all sources worldwide.  *See* 26 U.S.C. § 61; Frazier Decl., ¶ 70.  U.S. taxpayers must also disclose on their Form 1040 direct or indirect financial interests in, or signature authority over, any foreign financial account and the country in which any such account was located.  I.R.M. § 4.26.16.3.3(3)(A); Frazier Decl., ¶ 71; *see also* 26 U.S.C. § 6038D; 31 C.F.R. § 103.56(g).  Further, U.S. taxpayers with any such foreign bank account that had an aggregate value of $10,000 or more at any time during a particular calendar year are required to file a Report of Foreign Bank and Financial Accounts Form TD F 90-22.1 ("FBAR") with the Department of the Treasury.  31 U.S.C. § 5314; 31 C.F.R. § 1010.350; Frazier Decl., ¶ 72.  These FBARs require the U.S. taxpayer completing them to identify the financial institution that held the foreign account, the type of the account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year at issue.  Foreign bank accounts that are not reported to the IRS are known as undisclosed offshore accounts.

II.    **Offshore Banking and the Use of Correspondent Accounts**

Correspondent banking is the provision of banking services by one bank to another bank which allows banks to conduct business and provide services for their customers in countries where the banks have no physical presence.  Frazier Decl., ¶ 13; Steven Mark Levy, *Federal Money Laundering Regulation: Banking, Corporate and Securities Compliance* § 15.01 Correspondent Banking and Money Laundering (2013).  Accordingly, banks that are licensed in a foreign country and have no office in the United States can provide services in the United States to their customers by opening a correspondent account with an existing U.S. bank.  Frazier Decl., ¶ 13.  Correspondent accounts can also serve as a means of moving funds from the United

States into the foreign respondent bank. Foreign banks with existing correspondent accounts may allow other foreign banks to use those accounts, allowing multiple foreign banks to gain access to U.S. dollar accounts, U.S. wire transfer systems, and other financial services available in the United States through a single correspondent account. *Id.* ¶ 14. Correspondent accounts through which foreign banks other than the account holder gain access to the U.S. market are known as "nested" correspondent accounts. *Id.*

### III. The Belize Entities' Involvement with Undeclared Offshore Accounts

#### A. BBIL and BBL's Correspondent Account

BCB Holdings Limited is a publicly-traded financial-services holding company based in Belize. Frazier Decl, ¶ 30. According to BCB Holding Limited's 2010 annual report, BCB consisted of four subsidiaries: (1) Belize Corporate Services, which is incorporated and based in Belize and provides corporates services to clients both domestically (in Belize) and internationally; (2) British Caribbean Bank International Limited, which is incorporated and based in Belize and provides offshore banking services to international clients; (3) Belize Bank Limited ("BBL"), which is incorporated and based in Belize and focuses on domestic commercial and retail banking in Belize; and (4) British Caribbean Bank Limited, which operates banks in the Turks and Caicos Islands. *Id*. at ¶ 22. BCB Holdings Limited later changed the name of British Caribbean Bank International Limited to Belize Bank International Limited (BBIL) and spun-off or de-merged from British Caribbean Bank Limited. *Id*. at ¶ 23.

During the time period January 1, 2006 through December 31, 2014, the Belize entities used correspondent accounts at Citibank and Bank of America. Agent Frazier reviewed IRS files and publicly available data and determined that BBIL and BBL used an account at Bank of America ending in 6053. Frazier Decl., ¶¶ 56-57. Bank of America maintains its headquarters in Charlotte, NC, and maintains an office, among other places, at 701 Brickell Avenue, Miami,

5

Florida.  Though BBL focuses on Belizean clients and BBIL focuses on international clients, it is necessary to investigate both banks because Agent Frazier's investigation has revealed that the banks historically comingle their names, operations, and marketing.  *Id*. at ¶ 57.  Agent Frazier's investigation also revealed that BBIL and Belize Corporate Services used another account at Bank of America ending in 6058 beginning in 2011 or 2012.  *Id*. at ¶ 58.  Publically available information additionally revealed that BBIL and BBL maintain a correspondent account at Citibank.  *Id*. at ¶ 59.  Citibank maintains its headquarters in New York, and maintains an office, among other places, at 201 Biscayne Boulevard, Miami, Florida.

Through their correspondent relationships, BBIL, BBL, and users of their correspondent accounts such as Belize Corporate Services, could wire funds from Belize to their correspondent accounts at Bank of America and Citibank in the U.S., and in turn, wire funds from the correspondent accounts to other accounts within the U.S. or overseas.  *Id*. at ¶ 60.  BBIL and BBL also had the ability to issue checks drawn on the correspondent accounts at Bank of America and Citibank.  *Id*.  Checks drawn on a correspondent account function like any check drawn on an account at a U.S. financial institution and could be deposited, or cashed for U.S. dollars, at other financial institutions.  *Id*.  A correspondent account might also serve as a means of moving funds from the U.S. into a foreign respondent bank—BBIL and BBL in this case.  *Id*.  Based on the IRS's experience, the IRS reasonably believes that the Belize entities used their correspondent accounts to provide offshore banking services to U.S. taxpayers, who the IRS believes may have failed to report the existence of their foreign bank accounts and income to the IRS and the Department of the Treasury.

### B. U.S. Taxpayers Used the Belize Entities to Avoid Disclosing Their Foreign Accounts

The IRS's experience suggests that numerous unknown U.S. taxpayers may be using the Belize entities and their correspondent accounts to avoid disclosing offshore accounts and associated taxable income. In the IRS's experience, U.S. taxpayers hold undisclosed foreign accounts in order to conceal their income from the IRS. *Id.* at ¶ 81. Indeed, there is a direct correlation between unreported income and the lack of visibility of that income to the IRS. *Id.* at ¶ 81. For example, when a third-party pays income to a taxpayer and does not report the taxpayer's income to the IRS, the taxpayer-recipient of that income is far less likely to report the income herself. *Id.* Belize is a financial secrecy jurisdiction whose banking laws permit U.S. residents to establish accounts without disclosure of information about such accounts to the public or the IRS. *E.g.*, *United States v. Milligan*, 371 F. Supp. 2d 1127, 1128 (D. Arizona 2005); Staff of Senate Commission on Governmental Affairs, Crime and Secrecy, 98th Cong., 1st Sess., The Use of Offshore Banks and Companies 5-6 (Comm. Print 1983); Frazier Decl. ¶ 19.

Based on the IRS's experience with undisclosed offshore accounts and jurisdictions such as Belize, Agent Michael Frazier began an investigation to determine if unknown taxpayers were using the Belize entities to evade their U.S. taxes. As part of his investigation, Agent Frazier visited the websites of BBL and BBIL. He noted that those websites advertised BBIL's ability to provide undisclosed accounts to non-Belize residents. Frazier Decl., ¶ 36. Agent Frazier also visited the website of Belize Corporate Services. Frazier Decl., ¶¶ 25-34. The Belize Corporate Services website stated that it was "Belize's leading international financial service provider" and that as of March 2010, it had "over 16,400 companies under management." *Id.* at ¶¶ 25, 27. The Belize Corporate Services website advertised a number of products and services, which in the

7

IRS's experience are attractive to U.S. taxpayers seeking to hide offshore accounts, including setting up confidential Belizean corporations, virtual office services, and nominee director services.  *Id*. at ¶¶ 28-32.

Agent Frazier additionally reviewed IRS records of corporate service provider audits. Taxpayers use corporate service providers to set up structures designed to disguise beneficial ownership in foreign assets.  *Id*. at ¶ 38.  Agent Frazier reviewed IRS examination files of other corporate service providers known to or suspected of assisting taxpayers in hiding assets from the IRS.  Agent Frazier reviewed the IRS's files of "Service Provider-1," that provided offshore services to clients.  *Id*. at ¶ 39.  Agent Frazier's research revealed multiple instances where clients of Service Provider-1 incorporated a Belize corporation using the services of Belize Corporate Services as the registrar or nominee director, using the address of BBL as the corporate address of the Belize corporation and setting up offshore bank accounts at BBIL nominally owned by the Belize corporation or other foreign entities.  Such structures concealed the client's ownership of accounts held in foreign banks.

Agent Frazier reviewed the IRS's files regarding "Service Provider-2."  *Id*. at ¶ 40. Agent Frazier learned of situations involving the provision of nominee directors, the formation of offshore companies and offshore trusts in Belize and other foreign jurisdictions, offshore bank, brokerage and precious metal accounts, and other administrative services such as mail forwarding.  *Id*.  These situations included instances where Service Provider-2 made payments or deposits to BBIL using wire transfers and credit cards and used the services of Belize Corporate Services to incorporate Belizean IBCs.  *Id*.  The formation of these offshore entities was part of a package of services that included the foreign corporation's ownership of bank accounts at BBIL. *Id*.

Agent Frazier reviewed IRS files regarding "Service Provider-3," including emails and billing invoices for various services. *Id*. at ¶ 41.  Service Provider-3 provided its clients with bearer shares, certificates of incumbency, articles of incorporation, nominee director services, and the formation of offshore entities in Belize and other jurisdictions.  *Id*.  Service Provider-3 also offered mail forwarding services to clients.  *Id*.  These documents demonstrated Service Provider-3 was billed for the services of Belize Corporate Services to incorporate Belizean corporations and usage of BBIL's address on corporate documents.  *Id*.  The formation of these offshore entities was part of a package of services that included the foreign corporation's ownership of bank accounts and the use of mail forwarding to conceal the ownership of the accounts.  *Id*.

Agent Frazier additionally reviewed IRS records from voluntary disclosure programs.  The IRS operated three voluntary disclosure programs allowing certain U.S. taxpayers with undisclosed offshore accounts to disclose such account in exchange for potential avoidance of criminal prosecution among other things. *Id*. at ¶¶ 42-45.  Agent Frazier's review revealed at least 20 different voluntary disclosure submissions relating to at least 23 previously undisclosed accounts at BBIL or BBL.  *Id*. at ¶ 46.  Agent Frazier confirmed that these disclosures involved taxpayers who failed to report taxable income associated with their accounts at BBIL and BBL.  *Id*.  Agent Frazier additionally personally interviewed five taxpayers, referred to as Taxpayers 1-3 and 5-6, who made voluntary disclosures.

"Taxpayer 1" was the owner of a cargo-brokerage company.  *Id.* at ¶ 48.  In an interview with Agent Frazier, he admitted owning a Belizean corporation, which a corporate service provider formed for him.  Taxpayer-1 used his Belizean corporation to open an account at BBIL through its website and at another Belize bank.  Taxpayer-1 used the accounts to receive wire

transfers from customers of his business. In order to hide the account, Taxpayer-1 requested that statements and other account information not be mailed to his U.S. address. Taxpayer-1 accessed the account remotely and used part of the funds to invest in real estate and construct a vacation home in Belize. Although Taxpayer-1 was the beneficial owner of the Belizean corporation and its bank accounts, he did not report the Belizean corporation, the ownership of the accounts, or the receipt of the income directed to his account on his U.S. tax returns until he made his voluntary disclosure to the IRS.

Agent Frazier interviewed "Taxpayer-2" who is a consultant in the petroleum and energy industries. *Id*. at ¶ 49. With the assistance of Belize Corporate Services, Taxpayer-2 set up a Belizean corporation to receive consulting income from his international clients. Through the Belizean corporation, Taxpayer-2 established a bank account at BBIL, which was funded with consulting income generated by his foreign clients. Taxpayer-2 had signatory authority, beneficial ownership, and control over the funds in the account at BBIL. Taxpayer-2 did not report the income, or the ownership of the account, on his U.S. tax returns. He also did not report his ownership of the Belizean IBC on Form 5471 until he participated in the IRS's voluntary disclosure program.

Agent Frazier interviewed "Taxpayer-3," who with "Taxpayer-4"[1] set up a bank account in the Bahamas in the early 1990s to hide funds from possible malpractice claims related to Taxpayer-3's medical practice. *Id*. at ¶ 50. Subsequently, in 2005, Taxpayer-3 and Taxpayer-4 traveled to Belize on a vacation and set up an account at BBL, transferring funds from their

---

[1] Taxpayer-4 is married to Taxpayer-3 and was the joint owner of the relevant offshore bank accounts and filed a joint return with Taxpayer-3. Agent Frazier only interviewed Taxpayer-3.

Bahaman account to the Belizean account.[2]  They had joint signatory authority over the account, and Taxpayer-3 requested the bank to hold all mail related to the account.  Monies in the BBL account were invested in certificates of deposit.  Neither the Bahamian or Belizean bank accounts, nor their earnings, were reported on Taxpayer-3 and Taxpayer-4's U.S. tax returns until their participation in the IRS's voluntary disclosure program.

Agent Frazier interviewed "Taxpayer-5" who is a maritime lawyer who established a Belizean corporation to provide ship registration and brokerage services to international clients. *Id*. at ¶ 51.  Taxpayer-5 opened an account at BBIL in the name of the Belizean corporation using his U.S. passport and bank references from the United States.  Taxpayer-5 opened the BBIL account remotely and managed the BBIL account via telephone.  Taxpayer-5 funded the BBIL account through a wire transfer from U.S.-based accounts and through wire transfers of proceeds from his ship registration and brokerage service business.  Taxpayer-5 had beneficial ownership of and complete control over the funds in the BBIL account, yet Taxpayer-5 did not report the Belizean corporation on Form 5471, nor did he report the BBIL account or any associated income on his U.S. tax returns until he made his voluntary disclosure to the IRS.

Finally, Agent Frazier interviewed "Taxpayer-6," who was a client of Service Provider-2, and was referred to Belize Corporate Services by Service Provider-2.  Belize Corporate Services helped Taxpayer-6 set up a Belizean corporation with accounts at BBIL and a Swiss bank and offered him nominee director services, which he declined.  The accounts were in the name of the

---

[2] This account was identified as being held at BBL.  Agent Frazier believes this account was likely held at BBIL rather than BBL.  At the time this account was opened, both banks used the same location and operational staff.  Because the distinction is primarily a legal one, it is likely that the bank staff did not explain the distinction to Taxpayer-3 or Taxpayer-4 when the account was opened.

Belizean corporation, which Taxpayer-6 controlled. These accounts held monies transferred from Taxpayer-6's previously undisclosed bank account in Jersey. The BBIL account included income that was not disclosed or taxed on Taxpayer-6's U.S. tax returns prior to Taxpayer-6's participation in the Service's offshore voluntary disclosure initiative.

In addition to reviewing the voluntary disclosures, Agent Frazier researched public records of criminal proceedings in the United States in which the defendants used secret accounts at BBIL (or possibly BBL) and concealed criminal proceeds. Frazier Decl., ¶53. Agent Frazier identified four cases involving improper uses of accounts at BBIL to hide assets. In one example, the United States District Court for the District of Oregon sentenced John Anthony Williams to 51 months in prison for multiple counts including wire fraud, mail fraud, and money laundering. *United States v. Williams*, No. 03-cr-60104 (D. Ore. Feb. 14, 2005). Williams was a financial advisor and estate planner who defrauded one of his elderly clients out of more than $400,000. Frazier Decl., ¶53; *see also United States v. Williams*, 441 F.3d 716, 719-20 (9th Cir. 2006). In an attempt to hide his actions, Williams formed an offshore company in Belize, opened a bank account at BBIL, and wire transferred the stolen funds to the account. In Agent Frazier's experience, persons who use undisclosed foreign bank accounts to hold the proceeds of criminal or fraudulent activity also use these accounts to conceal income from the Service. Frazier Decl., at ¶ 54.

    C.    **The IRS's Current Investigation**

To further its pending investigation and the identification of U.S. taxpayers who failed to disclose private offshore accounts, the IRS is seeking to issue summonses that will allow it to identify U.S. taxpayer-clients of the Belize entities who have not disclosed the existence of their

offshore accounts, nor reported income earned on those accounts. The "John Doe" class, therefore, is as follows:

> United States taxpayers who, at any time during the years ended December 31, 2006, through December 31, 2014, directly or indirectly had interests in or signature or other authority (including authority to withdraw funds, trade or give instructions or receive account statements, confirmations or other information, advice or solicitations) with respect to any financial accounts maintained at, monitored by, or managed through Belize Bank International Limited ("BBIL"), Belize Bank Limited ("BBL"), or Belize Corporate Services Limited ("Belize Corporate Services"), their predecessors, subsidiaries, and affiliates, and financial accounts maintained at, monitored by, or managed through other financial institutions that BBIL, BBL or Belize Corporate Services permitted to transact client business through their United States correspondent accounts at Bank of America, National Association or Citibank, National Association

Summonses, attached as Exhibit 10 and 11 to the Frazier Decl. As discussed below, the summonses and their "John Doe" class are authorized and appropriate under Sections 7609(f) and (h) of the Internal Revenue Code, 26 U.S.C. § 7609.

## ARGUMENT

One of the primary functions of the IRS is to review and audit tax returns submitted by U.S. taxpayers to ensure that all applicable taxes have been paid. Accordingly, § 7601 of the Internal Revenue Code requires the Secretary of the Treasury to "cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." 26 U.S.C. § 7601. To aid the IRS in carrying out this function, § 7602 authorizes the Secretary to summon records and testimony that may be relevant or material to an investigation. 26 U.S.C. § 7602. Specifically, § 7602, from which the IRS derives its principal information-gathering powers, authorizes the IRS:

> [f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, [or] determining the liability of any person for any internal revenue tax . . . [t]o summon . . . any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . ., or any other person the Secretary may deem proper, to

> appear . . . and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

In passing Section 7602, Congress intended "to provide the Secretary with broad latitude to adopt enforcement techniques helpful in the performance of his tax collection and assessment responsibilities." *United States v. Euge*, 444 U.S. 707, 715 n.9 (1980). Indeed, the Supreme Court has noted that section 7602 forms the "centerpiece" of the IRS's "expansive information-gathering authority." *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984); *see United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014) ("And such an investigatory tool, we have recognized, is a crucial backstop in a tax system based on self-reporting."). "Under 26 U.S.C. § 7602, the IRS has wide latitude to issue a summons for investigatory purposes." *Reiserer v. United States*, 479 F.3d 1160 1166 (9th Cir. 2007) (*citing United States v. Jose*, 131 F.3d 1325, 1327 (9th Cir. 1997) (en banc)). "'To establish a need for judicial enforcement, this showing need only be minimal . . . . [T]he statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted.'" *Jose*, 131 F.3d at 1327-28 (*quoting Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985)); *see also Arthur Young*, 465 U.S. at 816 ("the very language of § 7602 reflects … a congressional policy choice *in favor of disclosure* of all information relevant to a legitimate IRS inquiry. In light of this explicit statement by the Legislative Branch, courts should be chary in recognizing exceptions to the broad summons authority of the IRS.")

The IRS's authority to issue "John Doe" summonses to banks or other depositories to discover the identity of individuals who may have failed to disclose all of their income was expressly recognized by the Supreme Court in *United States. v. Bisceglia*, 520 U.S. 141 (1975), and later codified in Section 7609(f), which provides:

> Any summons . . . which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that –
>
> > (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

>   (2)   there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
>
>   (3)   the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f). The Court's determination as to whether the IRS has met the requirements under Section 7609(f) for the issuance of a "John Doe" summons "shall be made *ex parte* and shall be made solely on the petition and supporting affidavits." 26 U.S.C. § 7609(h)(2). Here, the Court should authorize the issuance of the summonses because all three statutory prerequisites have been met. First, the summonses relate to the investigation of an ascertainable group or class of persons, namely U.S. taxpayers who held an interest in accounts at BBIL or BBL or who established or maintained accounts with the assistance of Belize Corporate Services. Second, there is a reasonable basis for believing that U.S. taxpayers who held an interest in any such accounts failed to declare the account and/or the income related to it to the IRS, thereby violating one or more provisions of the internal revenue laws. Third, the information sought is not readily available to the IRS from other sources.

## I.   The Investigation Concerns an Ascertainable Class

The summonses here clearly relate to an investigation of an ascertainable group of people, which the summonses define as individuals having authority over accounts at BBIL or BBL or accounts established or maintained with the assistance of Belize Corporate Services during the tax years 2006 through 2014. *See* Frazier Decl., Ex. 10, 11. This is sufficient to establish that the summonses relate to an ascertainable group of persons.

Numerous cases have endorsed the service of a John Doe summons seeking information on almost identical classes. *E.g., In re Tax Liabilities of John Does (UBS AG)*, No. 1:08-mc-

21864 (S.D. Fla. Jul. 1, 2008).[3] In the *UBS AG* case, this court approved the issuance of an IRS John Doe summons for records in furtherance of investigation into the identity of unknown taxpayers having signature or other authority over accounts at the Swiss bank. In the process, this court (and each of the courts listed in note 3) found that a class of John Does, substantially similar to the class here, was ascertainable. *See also In re Tax Liabilities of John Does Who from January 1, 2005 through December 31, 2010, Transferred Real Property in the State of California*, No. 2:10-mc-00130, 2011 WL 6302284, at *2 (E.D. Cal. Dec. 15, 2011) (holding that IRS investigation related to an ascertainable group of people where the summons "squarely particularize[d] the individuals sought from the general public" by identifying the class as California residents who between 2005 and 2010 were involved in certain real property transfers for little or no consideration); *In re Tax Liabilities of John Does*, No. 03-22793-CIV, 2003 WL 22953182, at * 1 (S.D. Fla. Oct. 30, 2003) (holding that IRS investigation related to an ascertainable group of people where summons identified class as U.S. taxpayers who between 1997 and 2003 sold credit insurance policies where the policies were reinsured with entities in the Turks and Caicos Islands). Here, similarly, the IRS has established that the investigation underlying the summonses relate to an "ascertainable group or class of persons." 26 U.S.C. § 7609(f).

---

[3] *See also In re Tax Liabilities of John Does (Sovereign Management & Legal, Ltd.)*, No. 1:14-mc-417 (S.D.N.Y. Dec. 19, 2014); *In re Tax Liabilities of John Does (Butterfield Bank)*, No 1:13-mc-377 (S.D.N.Y. Nov. 12, 2013); *In re Tax Liabilities of John Does (Zurcher Kantonalbank)*, No. 1:13-mc-378 (S.D.N.Y. Nov. 7, 2013); *In re Tax Liabilities of John Does (First Caribbean Int'l Bank)*, No. 3:13-cv-1938 (N.D. Cal. Apr. 29, 2013); *In re Tax Liabilities of John Does (Wegelin & Co.)*, No. 1:13-mc-21 (S.D.N.Y. Jan. 29, 2013); *In re Tax Liabilities John Does (HSBC India)*, No. 4:11-cv-1686 (N.D. Cal. Apr. 7 , 2011).

II.  **There is a Reasonable Basis to Believe that the Unknown Persons May Fail, or May Have Failed, to Comply with the Internal Revenue Laws**

The IRS has a reasonable basis to believe that the unknown individuals who comprise the group of persons set forth in the summonses failed or may have failed to comply with provisions of the internal revenue laws.  When enacting § 7609(f), Congress did "not intend to impose an undue burden on the [IRS] in connection with obtaining a court authorization to serve this type of summons."  H. Rep. No. 940658, 94th Cong., 1st Sess., at 311.  Accordingly, to meet the "reasonable basis" prong, the IRS need only show that a transaction has occurred that is "of such a nature as to be reasonably suggestive of the possibility that the correct tax liability with respect to that transaction may not have been reported."  *Id.*  Courts, therefore, have interpreted this requirement narrowly as intended only "to prevent the Service from exercising its summons power in an arbitrary or quixotic manner."  *In re Tax Liabilities of John Does, Members of the Columbus Trade Exchange in the Years 1977 and 1978*, 671 F.2d 977, 980 (6th Cir. 1982).

Here, based on the IRS's experience, U.S. taxpayers have made use of offshore accounts such as the accounts maintained at BBIL or BBL or accounts established or maintained with the assistance of Belize Corporate Services to evade the reporting and payment of income taxes.  *See* Frazier Decl., ¶¶ 5-6, 48-52.  There have been at least 20 voluntary disclosures made by U.S. taxpayers holding undisclosed accounts at BBIL or BBL where those taxpayers failed to report income related to those undisclosed accounts.  *Id.* at ¶ 46.  There have also been a number of criminal proceedings in the United States in which the defendants were proved or alleged to have used accounts at BBIL for tax evasion or as concealed repositories for the proceeds of the crime, and thus failed to report that concealed income.  *Id.* at ¶ 53.

These facts plus the IRS's experience with similar banking situations shows that U.S. taxpayers with accounts at BBIL or BBL or accounts established or maintained with the assistance of Belize Corporate Services may have failed to disclose those accounts, and report income related to them, as required by law.  The IRS's experience, moreover, demonstrates that there is a direct correlation between unreported income and the lack of visibility of that income

17

to the IRS.  *Id.* at ¶ 81.  Based on the IRS's experience, U.S. taxpayers have made use of offshore accounts such as the accounts maintained at BBIL and BBL through the Citibank and Bank of America correspondent accounts specifically to evade the reporting and payment of income taxes.  *Id.* at ¶¶ 6-15.  Agent Frazier's investigation also revealed that the Belize entities marketed their abilities to obscure the clients' identities from detection by the IRS.  *See id*. at ¶¶ 24-34, 36.

Accordingly, this information is sufficient to establish that the IRS has a reasonable basis for investigating the group of unknown persons included in the Summons.  *See, e.g., United States v. Kersting*, 891 F.2d 1407 (9th Cir. 1989); *United States v. Pittsburgh Trade Exchange, Inc.*, 644 F.2d 302, 306 (3d Cir. 1981) (IRS agent's testimony that transactions of the type the summoned party arranged for its clients were "inherently susceptible … to tax error" sufficient to meet "reasonable basis" prong); *United States v. Ritchie*, 15 F. 3d 592, 601 (6th Cir. 1994) (clients' payment for legal services with large amounts of cash provided a reasonable basis to issue a "John Doe" summons).  Here, as Agent Frazier's Declaration demonstrates, the IRS not only has a suspicion that the John Doe class includes U.S. taxpayers who are not complying with the law; it knows that the class very likely includes such violators.

### III.  The Information Sought About the "John Doe" Class Is Not Readily Available from Other Sources

Finally, the information the IRS is seeking through the summonses is not readily available to it from any other sources.  The identities of individuals is information that is not readily available to the IRS when those identities are known to third parties who "are not required to identify" them to the IRS.  *United States v. Liebman*, 742 F.2d 807, 808 (3d Cir. 1984).  In *Liebman*, the Third Circuit held that the IRS could not readily access the names of all clients of a law firm who deducted from their taxes legal fees paid in connection with the acquisition of certain tax shelters from any source other than the law firm itself, including the IRS's own tax records, because "taxpayers who deduct legal fees are not required to identify the recipients."  *Id.* Here, the very need for the "John Doe" summons is premised on the fact that

U.S. taxpayer-clients of the Belize entities – although required to do so – failed to disclose the identity of their offshore bank accounts to the IRS and, therefore, remain unknown to the IRS.

The fact that the IRS was alerted to the existence of a class of persons reasonably likely to be violating internal revenue laws from one source does not establish that the identities of the individuals in that class are readily available to the IRS from that same source, as the Court found in *In re Tax Liabilities of John Does Who Sold Credit Insurance Policies*, 2003 WL 22953182, at *1. In that case, an informant had alerted the IRS "to the existence of a class of persons engaged in transactions as subsidiaries of [American Bankers Insurance Group, Inc. ("ABIG")] that are violative of internal revenue law." *Id.* The court noted, however, that despite having been alerted to the existence of the class, the identity of the members of that class was "not readily available through a means other than from [ABIG] itself". *Id.* Here, similarly, although the United States knows that a group of U.S. taxpayer-clients of the Belize entities who are in violation of internal revenue laws exists, the IRS cannot readily establish the identity of the members of that group of individuals from any source other than Citibank and Bank of America.

In some instances, tax treaties with foreign governments provide an alternate means of obtaining information about offshore accounts. However, the United States does not have a treaty with Belize that would permit the United States to obtain this information from a source within that country. United States Income Tax Treaties – A to Z, http://www.irs.gov/Businesses/International-Businesses/United-States-Income-Tax-Treaties---A-to-Z.

Courts have routinely recognized that the identities of U.S. taxpayers who the IRS reasonably believed were using foreign financial and credit card accounts to avoid complying with the internal revenue laws are not readily available from sources other than the financial institutions involved. For example, this Court in *In re Tax Liabilities of John Does Who During the Years Ended December 31, 1998 and 1999, Had Signatory Authority Over American Express or Master Card Credit, Charge or Debit Cards*, Case No. 00-cv-3919 (S.D. Fla. Oct. 39, 2000), issued an order authorizing the service of "John Doe" summonses upon American Express and

MasterCard International, Inc., for credits card information for cards issued by offshore banks. The Court held that the identities of the relevant U.S. taxpayers was not "readily available" from any sources other than AmEx and MasterCard, including the issuing offshore banks. *Id.*; *see also In re Tax Liabilities of John Does Who During the Years Ended December 31, 1999 through December 31, 2001, Had Signature Authority Over Visa Cards*, Case No. 02-mc-00049 (N.D. Cal. Mar. 25, 2002).

## CONCLUSION

The United States has shown that the IRS has met the requirements of 26 U.S.C. § 7609(f) in order to be allowed to serve its "John Doe" summons. Accordingly, the United States' Petition should be granted.

Dated: September 15, 2015

Respectfully submitted,

CAROLINE D. CIRAOLO
Acting Assistant Attorney General

s/ William E. Farrior
WILLIAM E. FARRIOR
S.D. Fla. Bar No. A5501479
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
202-616-1908 (v)
202-514-4963 (f)
William.E.Farrior@usdoj.gov

Of Counsel:

WIFREDO A. FERRER
United States Attorney